UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALVIN JUNIOR GIBBS,

                Petitioner,                          Case No. 2:18-cv-13273

v.

                                            Paul D. Borman

SHERMAN CAMPBELL,                  United States District Judge

                Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL *IN FORMA PAUPERIS*

Petitioner Alvin Junior Gibbs, a state prisoner in the custody of the Michigan Department of Corrections, seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.)  Petitioner alleges in his habeas petition that his state sentencing guidelines were miscalculated.  (*Id*. at PgID 5.)[1]  He also seems to be arguing, as he did in state court, that he was denied effective assistance of trial and appellate counsel because his trial attorney miscalculated the sentencing guidelines during plea negotiations and his appellate attorney did not argue that issue on appeal.  (*Id*. at PgID 17.)

---

[1]  At the time, Michigan's sentencing guidelines created a range within which the trial court had to set the minimum sentence.  *See People v. Drohan*, 475 Mich. 140, 161 (2006), *abrogated in part on other grounds by People v. Lockridge*, 498 Mich. 358 (2015).  The maximum sentence is set by law.  *Id*.

Respondent Sherman Campbell argues in an answer to the habeas petition that Petitioner's challenge to the calculation of the sentencing guidelines is not cognizable on habeas review and that all of Petitioner's claims are procedurally defaulted and meritless.  (ECF No. 7, PgID  67-68.)  The Court agrees that Petitioner's claims do not warrant relief.  Accordingly, the habeas petition will be denied.  The Court also is denying a certificate of appealability, and granting leave to appeal *in forma pauperis*.

## I.  Background

### A.  The Charge, Rejection of a Plea Offer, and Jury Trial

Petitioner was charged with unarmed robbery, *see* Mich. Comp. Laws § 750.530, as a fourth habitual offender, *see* Mich. Comp. Laws § 769.12.  The charge arose from a purse-snatching incident in Wyoming, Michigan on June 7, 2012.

Before trial, the prosecutor offered to dismiss the habitual-offender enhancement if Petitioner pleaded guilty, as charged, to unarmed robbery.  The elimination of the habitual-offender enhancement meant that the maximum penalty of life imprisonment for a fourth, felony offender was reduced to 15 years.  The prosecutor and defense counsel also projected that the sentencing guidelines would be 43 to 86 months, instead of 43 to 172 months.  *See* Defendant's Acknowledgement and Rejection of Prosecutor's Offer of a Plea Agreement and

2

Notice of Intent to Proceed to Trial Without Further Plea Bargaining (ECF No. 1, PgID 30).  On August 28, 2012, Petitioner rejected the prosecutor's offer.  *See id*.

In 2013, the trial date was postponed two times for further plea negotiations. *See* Kent County Circuit Court Register of Actions, docket entries 34 and 36 (ECF 8-1, PgID 125).  Although the parties apparently reached a tentative agreement, a plea hearing scheduled for July 16, 2013, was cancelled when Petitioner declined to plead guilty.  *See id.,* docket entries 37-38.

Petitioner's jury trial began on August 26, 2013.  *See* 8/26/13 Trial Tr. (ECF No. 8-2).  The victim, Lisa Ann Rizvi, testified that, on June 7, 2012, she stopped at a gas station on the corner of 36th Street and Clyde Park Avenue in the city of Wyoming, Michigan.  After filling her gas tank, she got back in her car, but before she could close the car door, a man reached over her, grabbed her purse, and left. She called 911, and a police officer arrived shortly afterward.  She provided a description of the robber, and the officer subsequently took her to a location where she identified Petitioner as the robber.  The police also found her purse, and she was able to identify some things, such as hand lotion, gum, and lip gloss, which had been in her purse.  The police also recovered some cash that was folded like the cash which was in her purse before the incident.  *See* 8/27/13 Trial Tr. at pp. 23-36 (ECF No. 8-3, PgID 163-66).

Michael Young was present at the gas station during the robbery.  He heard the victim scream and saw someone wrestling or tussling inside the victim's car.  He did not get a close enough look at the person to be able to identify him, but he saw the man leave with a purse, and he informed the police that the man ran down 36th Street.  *See id*. at pp. 47-54 (ECF No. 8-3, PgID 169-70).

Erich Staman was the first police officer to respond to the crime scene.  He took the victim to the Foxcroft Apartments where some other officers thought they had captured the suspect.  After the victim identified the detained man and some personal items that had been in her purse, Staman canvassed the area and located the victim's purse.  *See id*. at pp. 54-62 (ECF No. 8-3, PgID 170-72).

Police Officer Blair Shellenbarger responded to the Foxcroft Apartments after receiving information that the suspect was there.  A resident informed Shellenbarger that someone had tried to enter the resident's apartment and was hiding behind a hallway door on the second floor of the building.  Shellenbarger found the suspect and took him into custody without incident.  He searched the man and found some personal items, including $24.00 in neatly folded bills, a tube of hand lotion, a package of gum, and two tubes of lip gloss.  At trial, Shellenbarger identified Petitioner as the man he arrested and searched.  *See id*. at pp. 69-74 (ECF No. 8-3, PgID 174-75).

Police Officer Kelli Duimstra also went to the Foxcroft Apartments to look for the suspect.  Some other officers took Petitioner into custody, but she transported Petitioner to the county jail and interviewed him.  Petitioner told her that he had been looking for his friend "Q" who had dropped him off near the Foxcroft Apartments and told him to wait there while "Q" tried to find some "smokes."  When Duimstra asked Petitioner why he had women's cosmetics in his pocket, he told her that the items belonged to his girlfriend who had left the cosmetics in Q's car.  Petitioner also denied being at any gas stations that day, and even though he provided two addresses as his current address, Duimstra determined that neither address was valid.  *See id.* at pp. 80-86 (ECF No. 8-3, PgID 177-78).

On recross-examination, Duimstra admitted that Petitioner was not wearing a dark blue shirt or white hat, as described by witnesses to the incident.  However, he did match the description of the suspect as being short and having a thin build. *Id.* at p. 93 (ECF No. 8-3, PgID 180).

The trial court allowed the prosecutor to present evidence that in 2005, Petitioner pleaded guilty to a charge of unarmed robbery.  The crime in that case also involved snatching a purse from a female victim and running away.  *See id.* at pp. 99-103 (ECF No. 8-3, PgID 182-83).

Petitioner did not testify or present any witnesses. *See id*. at p. 103 (ECF No. 8-3, PgID 183). His defense was that the victim had misidentified him as the robber. *See id.* at pp. 20-22 (ECF No. 8-3, PgID 162); 8/28/13 Trial Tr. at pp. 17-25 (ECF No. 8-4, PgID 189-191). On August 28, 2013, the jury found Petitioner guilty as charged. *See* 8/28/13 Trial Tr. at p. 51 (ECF No. 8-4, PgID 198).

## B.  The Sentence

Two days before his sentencing, Petitioner wrote to the trial judge and stated that he had talked to defense counsel on July 14 and July 15 and that defense counsel had said the sentencing guidelines were 36 to 142 months. Petitioner also stated in his letter that he had told defense counsel the sentencing guidelines were too high because there were no injuries or damages and that he would accept a plea offer once his guidelines were corrected. According to Petitioner, defense counsel told him that he would check on the matter, but he (Petitioner) learned after trial that his guidelines were 29 to 57 months without the sentencing enhancement and 29 to 114 months with the enhancement. He asked the trial court to be merciful, compassionate, and just when sentencing him. *See* ECF No. 1, PgID 32-33.

Petitioner was sentenced on October 3, 2013. The sentencing investigation report, which is dated the same day, shows a sentencing guidelines range of 29 to 114 months. *See* ECF No. 1, PgID 34. The trial court sentenced Petitioner within the guidelines to a minimum term of 108 months (9 years) in prison and a

6

maximum term of 45 years.  *See* 10/3/13 Sentence Hr'g Tr. at p. 9 (ECF No. 13-1, PgID 583).

## C.  The Direct Appeal

Petitioner appealed his conviction on grounds that: (1) his speedy trial rights were violated; (2) "other acts" evidence was improperly admitted at his trial; (3) the complainant's unreliable identification violated his right to due process; and (4) defense counsel's failure to make proper objections to the foregoing errors amounted to ineffective assistance of counsel.  *See* Defendant-Appellant's Brief on Appeal (ECF No. 8-10, PgID 297-330).  The Michigan Court of Appeals rejected these claims and affirmed Petitioner's conviction in an unpublished, *per curiam* opinion.  *See People v. Gibbs,* No. 318967, 2015 WL 728644 (Mich. Ct. App. Feb. 19, 2015); ECF No. 8-10, PgID 239-44.  Petitioner raised the same claims in the Michigan Supreme Court, which denied leave to appeal on November 24, 2015, because it was not persuaded to review the questions presented to the court.  *See People v. Gibbs*, 498 Mich. 919 (2015) (table decision).

## D.  The Motion for Relief from Judgment and Subsequent Appeals

On August 26, 2016, Petitioner filed a motion for relief from judgment in which he argued, among other things, that his trial attorney's miscalculation of the sentencing guidelines range caused him to reject the plea bargain and receive a

much greater sentence following a jury trial.  *See* Mot. for Relief from J. (ECF No. 8-6, PgID 203-05).[2]

On October 3, 2016, Petitioner wrote to the state trial court's clerk and explained that he wanted to amend his post-conviction motion to add a claim about appellate counsel's failure to raise certain claims on direct appeal.  Petitioner stated that the issue which deserved the most emphasis was his claim about trial counsel's calculation of the sentencing guidelines.  *See* Letter to Court Clerk (ECF No. 8-7).

Petitioner's letter was not filed in the state court until October 5, 2016.  *See id*.  Meanwhile, on October 3, 2016, the state trial court denied Petitioner's motion for relief from judgment pursuant to Michigan Court Rule 6.508(D)(3) because Petitioner failed to show "good cause" for not raising the issues on appeal.  *See* Order (Kent County Cir. Ct. Oct. 3, 2016); ECF No. 8-8, PgID 234.

After the trial court received Petitioner's letter about amending his post-conviction motion to include additional claims, the court treated the letter as a motion for reconsideration and denied the motion.  The court stated that the motion

---

[2] Petitioner also argued that: he was entitled to a remand because Michigan's mandatory sentencing guidelines had been declared unconstitutional; the inclusion of his expunged juvenile record in the sentencing investigation report required re-sentencing; the prosecutor erred by commenting on Petitioner's failure to tell the police why he possessed the victim's property shortly after the crime and on his failure to explain why he was running prior to his arrest; the admission of hearsay statements violated his rights under the Confrontation Clause; and trial counsel was ineffective for failing to request a missing-witness jury instruction.  *See* Mot. for Relief from J. (ECF No. 8-6, PgID 217-30).

failed procedurally and on the merits because Petitioner did not show ineffective assistance of appellate counsel and, therefore, he did not satisfy the "good cause" requirement of Michigan Court Rule 6.508(D)(3).  *See* Op. and Order (Kent Cty. Cir. Ct. Dec. 5, 2016); ECF No. 8-9.

Petitioner appealed the trial court's decision in a delayed application for leave to appeal.  His only claims on appeal were: (1) trial counsel obstructed his efforts to engage in plea negotiations by miscalculating the applicable guidelines; and (2) appellate counsel was ineffective for failing to argue this issue on appeal. *See* Appl. for Leave to Appeal (ECF No. 8-12, PgID 495-507).  The Michigan Court of Appeals denied leave to appeal because Petitioner failed to establish that the trial court erred in denying his motion for relief from judgment.  *See People v. Gibbs*, No. 337593 (Mich. Ct. App. Apr. 18, 2017); ECF No. 8-12, PgID 494.

Petitioner raised the same issues about trial and appellate counsel in the Michigan Supreme Court.  On May 1, 2018, the Michigan Supreme Court denied leave to appeal because Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Gibbs*, 501 Mich. 1059 (2018) (table decision).

## E.  The Habeas Petition, Responsive Pleading, and Reply

On October 18, 2018, Petitioner filed his habeas corpus petition.  His sole ground for relief reads as follows:

Miscalculation of Guideline Scoring

Zero offense variables; P.R.V. scored at 115.  On 8-28-12 entered into a signed agreement (attached).  Def. Counsel; Pros. Atty; Judge co-signed.  The agreement was 43-86 months on the minimum, 15 yr max.  Dismiss 4th habitual.  Sentence became 108 months to 15 (sic) yrs.  The guidelines scored out [at] 29-57 months[.] However, the agreement was not in concert with factual scores when looking at the plea offer/sentencing info report.

Pet. (ECF No. 1, PgID 5).  As noted above, Petitioner also seems to be raising the

ineffective-assistance-of-counsel claims that he presented to the state courts on

collateral review of his conviction.  *See id*. at PgID 16-29.

Respondent argues that Petitioner's claims are procedurally defaulted and

meritless.  In a subsequent letter to the Court, Petitioner asks the Court to remand

his case to the state trial court so that he can "accept the right plea bargain," which

he contends is 29 to 57 months.  *See* Petitioner's letter (ECF No. 9, PgID 568).

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

requires prisoners who challenge "a matter 'adjudicated on the merits in State

court' to show that the relevant state court 'decision' (1) 'was contrary to, or

involved an unreasonable application of, clearly established Federal law,' or (2)

'was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.'"  *Wilson v. Sellers*, 138 S. Ct. 1188, 1191

(2018) (quoting 28 U.S.C. § 2254(d)).  The Supreme Court has explained that

a state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)) (alterations added).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.,* at 413, 120 S.Ct. 1495. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id.,* at 410, 412, 120 S.Ct. 1495. The state court's application of clearly established law must be objectively unreasonable. *Id.,* at 409, 120 S.Ct. 1495.

*Id*. at 75.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt[.]'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal and end citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "[o]nly an 'objectively unreasonable' mistake, . . . one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement,' slips through the needle's eye of § 2254[.]" *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir. 2019) (quoting *Richter*, 562 U.S. at 103). "That's a 'high bar' to relief, which 'is intentionally difficult to meet.'" *Kendrick v. Parris,* 989 F.3d 459, 469 (6th Cir. 2021) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)), *cert. denied*, 142 S. Ct. 483 (2021).

### III.  Discussion

### A.  The Scoring of the Sentencing Guidelines

The Court begins its discussion by addressing Petitioner's allegation that his sentencing guidelines were miscalculated during the plea negotiations.  The guidelines, as scored by the attorneys before trial, were 43 to 86 months.  Petitioner asserts that the guidelines should have been 29 to 57 months because defense counsel incorrectly assessed at least 25 points for the offense variables, whereas the pre-sentence investigator scored zero points for the offense variables.  *See* Pet. and Petitioner's state appellate brief (ECF No. 1, PgID 5, 21-22, 25).

This claim lacks merit because, even if the guidelines were scored incorrectly, state sentencing guidelines are "a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Thus, Petitioner's challenge to the initial scoring of the sentencing guidelines is not a cognizable claim in this federal habeas corpus action.

## B.  Trial Counsel

Petitioner alleges next that his trial attorney's failure to score the sentencing guidelines properly during plea negotiations constituted ineffective assistance and caused him to reject a favorable plea offer.  Petitioner first raised this issue in his motion for relief from judgment, which the trial court denied because Petitioner failed to show "good cause" for not raising the claim during the direct appeal. Respondent, therefore, argues that Petitioner's claim is procedurally defaulted.

### 1.  Procedural Default

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997).  Under the related doctrine, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).   The United States Court of Appeals for the Sixth Circuit has explained the doctrine this way:

> While state courts (just like federal ones) must protect defendants' rights, they also may insist that defendants present their arguments on time and according to established procedures.  So a federal court usually may not review a state prisoner's habeas claim if (1) the prisoner broke a state procedural rule, (2) the state court enforced the rule, and (3) the procedural forfeiture was an adequate and independent ground for denying relief. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

*Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 273 (2020).

These factors are satisfied in this case. The procedural rule in question is Michigan Court Rule 6.508(D)(3), which states that a court may not grant relief if a defendant's motion "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence[.]" An exception exists when "the defendant demonstrates (a) good cause for failure to raise such grounds on appeal" and "(b) actual prejudice from the alleged irregularities that support the claim for relief" or "there is a significant possibility that the defendant is innocent of the crime." *Id.*

Petitioner violated Rule 6.508(D)(3) by raising his claim about trial counsel for the first time in his post-conviction motion, rather than during the direct appeal. This violation of Rule 6.508(D)(3) satisfies the first procedural-default factor.

"To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look 'to the last reasoned state court decision disposing of the claim.'" *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) (quoting *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (*en banc*)). The last state court to address Petitioner's ineffectiveness claim in a reasoned decision was the state trial court, which rejected Petitioner's claim in its order denying Petitioner's motion for relief from judgment. The court stated that Petitioner failed to raise his

claim on direct appeal and did not show "good cause" for his failure to comply

with Rule 6.508(D)(3).[3]  Because this ruling constituted enforcement of Rule

6.508(D), the second procedural-default factor is satisfied.  The third procedural-

default factor also is satisfied, because Rule 6.508(D)(3) is an adequate and

independent state ground for denying relief and foreclosing review of federal

---

[3]      In its order denying reconsideration, the trial court reiterated that Petitioner's
claim failed procedurally.  The court also determined that Petitioner's claim lacked
merit because trial counsel's incorrect prediction of Petitioner's sentence was not
enough to support a claim of ineffective assistance of counsel.  *See* Op. and Order
at pp. 1-2 (Kent Cty. Cir. Ct. Dec. 5, 2016); ECF No. 8-9, PgID 235-36.

The trial court's alternative holding on the merits does not require this Court
to disregard the state court's finding that Petitioner's claim was procedurally
barred.  *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998).  As explained in *Harris v.
Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an
> *alternative* holding.    By its very definition, the adequate and
> independent state ground doctrine requires the federal court to honor a
> state holding that is a sufficient basis for the state court's judgment,
> even when the state court also relies on federal law.  See *Fox Film Corp.
> v. Muller*, 296 U.S. 207, 210, 56 S. Ct. 183, 184, 80 L. Ed. 158 (1935).
> Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*,
> 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on
> federal habeas as long as the state court explicitly invokes a state
> procedural bar rule as a separate basis for decision.  In this way, a state
> court may reach a federal question without sacrificing its interests in
> finality, federalism, and comity.

*Id.* at 264 n.10 (emphasis in original).

claims. *Benton*, 942 F.3d at 307; *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

All three factors of the procedural-default test are satisfied here. "Still, a federal court may review a defaulted claim if the petitioner shows (1) good cause for the default and actual prejudice from the claimed error or (2) that she is actually innocent of the crime." *Benton*, 405 F.3d at 307.

### 2. "Cause" and Prejudice

Petitioner implies that his appellate attorney was "cause" for his procedural default because the attorney failed to raise his sentencing/ineffectiveness claim on direct appeal. Constitutionally ineffective assistance of counsel is cause for a procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *accord Williams v. Burt*, 949 F.3d 966, 973 (6th Cir.) ("Generally speaking, counsel's deficient performance in state court can serve as grounds for excusing a petitioner's procedural default."), *cert. denied*, 141 S. Ct. 276 (2020); *Benton*, 942 F.3d at 307 (noting that one "way to show cause for a default is to show that appellate counsel's failure to raise the issue was ineffective assistance in its own right"). But an attorney is constitutionally ineffective only if "counsel's performance was deficient," and "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

This standard applies to claims that appellate counsel was ineffective.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  An appellate attorney is constitutionally ineffective if (1) the attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal, and (2) there is a reasonable probability that the petitioner would have prevailed on appeal if his attorney had raised the issues.  *Id*. (citing *Strickland,* 466 U.S. at 687-91, 694).  AEDPA, moreover,

> erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.  AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement."

*Burt v. Titlow*, 571 U.S. 12, 19–20 (2013) (quoting *Richter*, 562 U.S. at 103).

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. . . .  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (internal citations omitted).

To determine whether appellate counsel was ineffective, the Court must assess the strength of the claim that appellate counsel failed to raise on appeal. *Carter v. Parris*, 910 F.3d 835, 841 (6th Cir. 2018) (citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008)).  "If there is no 'reasonable probability that inclusion of the issue would have changed the result of the appeal,' then habeas

relief will not be granted." *Id*. (quoting *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004)).

### a. Trial Counsel's Performance

The issue that Petitioner contends his appellate counsel should have raised on appeal is whether trial counsel's alleged failure to correctly calculate the sentencing guidelines constituted ineffective assistance.  Defense counsel and the prosecutor estimated that the guidelines range would be 43 to 86 months without the habitual-offender enhancement.  This calculation appears to have been based on an assessment of points for one or more offense variables.  *See* Sentencing Grid for Class C Offenses, OV Level III and PRV Level F (ECF No. 1, PgID 31).

Following Petitioner's trial, the pre-sentence investigator calculated the guidelines and declined to assess any points for the offense variables.  *See* Sentencing Information Report (ECF No. 1, Pg ID 34).  Without any points for the offense variables, the bottom end of the guidelines range was 29 months.  *See id*.; *see also* Sentencing Grid for Class C Offenses, OV Level I and PRV Level F (ECF No. 1, PgID 31).

Petitioner alleges that he would have avoided trial and pleaded guilty if his trial attorney had not assessed any points for the offense variables.  He maintains that the guidelines range, as correctly scored, would have been 29 to 57 months (2 years, 5 months to 4 years, 9 months) and that the maximum sentence would have

been 15 years.  *See* Pet. and Petitioner's appellate brief (ECF No. 1, PgID 5, 25).

Instead, he received a minimum sentence of 9 years in prison and a maximum

sentence of 45 years.

Petitioner was entitled to effective assistance of counsel during plea

negotiations.  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  But "[a] miscalculation

or erroneous sentence estimation by defense counsel is not a constitutionally

deficient performance rising to the level of ineffective assistance of counsel."

*United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993); *accord United States*

*v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990) (concluding that defense counsel's

mere inaccurate prediction of the sentencing guidelines did not amount to

ineffective assistance); *United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir. 1989)

(stating that "predicting a guidelines sentence is not the same as determining the

minimum or maximum sentence allowable under a statute," that defense counsel's

representations regarding the guidelines sentencing range were "merely an estimate

reflecting what he believed the likely range would be," and that the defendant was

not entitled to "characteriz[e] a mistaken prediction as ineffective assistance of

counsel").

Furthermore, the attorneys' projection of the sentencing guidelines was

based on information known to them a year before trial.  Whether they later revised

their estimate is not clear from the record, because details of their subsequent

negotiations are not a part of the record before the Court.  The pre-sentence

investigator, moreover, calculated the guidelines after trial.  The evidence, or lack

of evidence at trial, could have been why the pre-sentence investigator scored zero

points for the offense variables.  Given the record before the Court, the Court is

unable to say that defense counsel's initial scoring of the guidelines amounted to

deficient performance.

### b.  The Alleged Prejudice

Even if defense counsel's performance was deficient, the Court finds for the

following reasons that counsel's performance did not prejudice Petitioner.  He

claims that the prejudice was the obstruction of his efforts to enter plea

negotiations and having to go to trial.

Petitioner carries the burden of demonstrating a reasonable probability that

he would have accepted the prosecution's offer if he had been properly advised

about the sentencing guidelines.  *See Smith v. Cook*, 956 F.3d 377, 394 (6th Cir.

2020), *cert. denied*, 141 S. Ct. 1111 (2021).  When an attorney's deficient

performance leads to the rejection of the prosecution's plea offer, "a defendant

must show that but for the ineffective advice of counsel there is a reasonable

probability that the plea offer would have been presented to the court (*i.e.,* that the

defendant would have accepted the plea and the prosecution would not have

withdrawn it in light of intervening circumstances), that the court would have

accepted its terms, and that the conviction or sentence, or both, under the offer's

terms would have been less severe than under the judgment and sentence that in

fact were imposed." *Cooper*, 566 U.S. at 164.  Simply stated, to establish that trial

counsel's performance was prejudicial, Petitioner must show "that he would have

accepted the offer, the prosecution would not have rescinded the offer, and that the

trial court would not have rejected the plea agreement." *Byrd v. Skipper*, 940 F.3d

248, 257 (6th Cir. 2019).

### i.  Whether Petitioner Would Have Accepted a Different Plea Offer

Petitioner claims that he would have accepted the prosecutor's plea offer if

the sentencing guidelines had been scored at 29-57 months.  However, courts

should not upset a verdict "solely because of *post hoc* assertions from a defendant

about how he would have pleaded but for his attorney's deficiencies." *Lee v.*

*United States*, 137 S. Ct. 1958, 1967 (2017).  "Judges should instead look to

contemporaneous evidence to substantiate a defendant's expressed preferences."

*Id.*

The prosecutor's offer in Petitioner's case stated that the "probable"

guidelines were 43 to 86 months.  When Petitioner signed the form acknowledging

and rejecting the offer, he was made aware of that language and the fact that the

guidelines might change.  *See* Defendant's Acknowledgement and Rejection of

Prosecutor's Offer (ECF No. 1, PgID 30).

Furthermore, Petitioner rejected the prosecutor's offer even though the offer was very favorable and even though the plea-rejection form explained that the maximum possible sentence for the charge as a fourth habitual-offender was life imprisonment. Despite knowing how long his sentence might be if he lost at trial and that there was a gaping disparity between his possible sentence and the plea offer, "he *still* chose to roll the dice at trial." *Smith*, 956 F.3d at 394 (emphasis in original). In addition, as pointed out above, the state court's docket indicates that Petitioner was unwilling to plead guilty after additional plea negotiations concluded and a plea hearing was scheduled.

Finally, Petitioner maintained his innocence at trial by asserting a defense that the victim misidentified him as the robber. He asserted that defense despite evidence that he fled to an apartment complex after the robbery, tried to hide from the police, possessed some of the victim's belongings when he was captured, and was identified by the victim shortly afterward. The "totality of the evidence," *Lee*, 137 S. Ct. at 1966, cuts against the notion that trial counsel obstructed Petitioner's efforts to negotiate a plea and that Petitioner would have accepted a plea offer if his sentencing guidelines had been scored differently. It appears instead that he may have been hoping for an acquittal at trial, thereby avoiding any time in prison.

### ii.  Whether the Prosecutor Would Have Offered a Guidelines Range of 29 to 57 Months

Petitioner alleges that under correctly scored sentencing guidelines, his minimum sentence would have been 29 to 57 months.  *See* Pet. (ECF No. 1, PgID 5).  But there is nothing in the record to indicate that the prosecutor would have agreed to sentencing guidelines in that range.

Although the prosecutor had no objection to the pre-sentence investigator's scoring of the guidelines after trial, that guidelines range was 29 to *114* months due to Petitioner's status as a fourth felony offender.  Petitioner lost the benefit of having the habitual-offender enhancement dismissed when he rejected the prosecutor's plea offer and chose to go to trial.

Further, at Petitioner's sentencing, the prosecutor urged the trial court to score Petitioner at the top of the guidelines because of Petitioner's pattern of preying on vulnerable women and snatching their belongings and because Petitioner was not likely to be rehabilitated.  *See* 10/3/13 Sentence Hr'g Tr. at pp. 4-5 (ECF No. 13-1, PgID 581-82).  Petitioner has failed to show that the prosecutor would have agreed to sentencing guidelines of 29 to 57 months if defense counsel had calculated the guidelines in that range before trial.

### iii.  Whether the Trial Court Would Have Accepted a Plea Offer with Sentencing Guidelines of 29 to 57 Months

Finally, Petitioner has not shown that the trial court would have agreed to lower sentencing guidelines and the elimination of the habitual offender enhancement.  Petitioner was 45 years old at sentencing, and the trial court pointed out that Petitioner had begun to commit significant crimes thirty years earlier at the age of fifteen.  The court also pointed out that: Petitioner's current crime was committed while he was on parole from an earlier conviction; he tested positive for cocaine several times while on parole; he did not complete the ordered treatment; he absconded on parole one time; and he had no consistent employment.  *See id.* at pp. 7-8 (ECF No. 13-1, Pg ID 582).

The court then sentenced Petitioner to a minimum sentence of 108 months (9 years), which was near the high end of the guidelines range, as scored by the pre-sentence investigator.  The trial court's comments and judgment of sentence suggest that the court would not have accepted a plea bargain with a sentencing guidelines range of 29 to 57 months.  *See McGowan v. Burt*, 788 F.3d 510, 518 (6th Cir. 2015) ("[T]he fact that the minimum sentence ultimately imposed is at the high end of the actual minimum-sentence range strongly suggests the trial court would not have been willing to sentence [the habeas petitioner] in accordance with the parties' agreement.").

To conclude, Petitioner has not established that his trial attorney's performance was deficient and that the allegedly deficient performance prejudiced him.  Thus, there is not a reasonable probability that Petitioner would have prevailed on appeal if his appellate attorney had raised a claim about trial counsel's calculation of the sentencing guidelines.  As such, appellate counsel was not constitutionally ineffective, and Petitioner has not shown "cause" for his procedural default.  Without "cause," the Court need not consider whether Petitioner has shown prejudice.  *Benton,* 942 F.3d at 307.

### 3.  Miscarriage of Justice

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 488.  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  !

Petitioner has not supported his constitutional claim with new and reliable evidence of actual innocence. Therefore, a miscarriage of justice will not result from the Court's failure to address the merits of Petitioner's claim about trial counsel. That claim is procedurally defaulted.

## C. Appellate Counsel

Petitioner raises an independent claim about his appellate attorney on direct review. According to Petitioner, there was no excuse for appellate counsel's failure to raise the issue of trial counsel's incorrect calculation of the sentencing guidelines. *See* Pet. (ECF No. 1, PgID 28).

The state trial court considered this claim in its order denying reconsideration of the order rejecting Petitioner's motion for relief from judgment. The court opined that Petitioner had "fail[ed] to show ineffective assistance of appellate counsel as to any of the issues raised in his Motion for Relief from Judgment." *See* Op. and Order at p.1 (Kent Cnty. Cir. Ct. Dec. 5, 2016); ECF No. 8-9, PgID 235. Elsewhere, the trial court stated that Petitioner had failed to show ineffective assistance of either trial counsel *or* appellate counsel on the issue of trial counsel's calculation of the sentencing guidelines during plea bargaining. *See id.* at p. 2 (ECF No. 8-9, PgID 236) (emphasis in original, footnote omitted).

This Court agrees that appellate counsel was not constitutionally ineffective. As pointed out above in the discussion on "cause" for Petitioner's procedural

default, trial counsel's calculation of the sentencing guidelines did not amount to constitutionally ineffective assistance and, therefore, appellate counsel was not ineffective for failing to raise Petitioner's sentencing and ineffectiveness claim on appeal.  "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Furthermore, it would be error to focus on the alleged inaccuracy in the calculation of the sentencing guidelines, rather than the adequacy of the state court's assessment of Petitioner's claim about counsel.  *McGowan*, 788 F.3d at 516.  When assessing a state court's assessment of a petitioner's ineffective-assistance-of-counsel claim, a habeas court must apply "the harsh standards of AEDPA," as elaborated by the Supreme Court in *Richter.  Cunningham v. Shoop*, __ F.4th __, Nos. 11-3005/20-3429, 2022 WL 92594, at *22 (6th Cir. Jan. 10, 2022).

The trial court rejected Petitioner's claim about appellate counsel on the basis that the underlying claim about trial counsel failed.  This conclusion was objectively reasonable because appellate counsel satisfied *Strickland's* deferential standard.   The Court, therefore, cannot grant habeas relief on Petitioner's independent claim about appellate counsel.  *See id*.

## IV.  Conclusion and Order

For the reasons set forth above, Petitioner's challenge to the scoring of his sentencing guidelines is not cognizable on habeas corpus review, the claim about his trial attorney is procedurally defaulted, and the state court's rejection of the claim about appellate counsel was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement.  Accordingly, the Court **DENIES** the habeas corpus petition.

The Supreme Court stated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), that "[a] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first request and obtain a [certificate of appealability]."  *Id.* at 327.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To satisfy this standard, a habeas petitioner must demonstrate that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further*."  Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining that to obtain a certificate of appealability under § 2253(c), a habeas petitioner must show that reasonable jurists could debate whether the petition

28

should have been resolved differently or that the issues deserved encouragement to proceed further); *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020) (explaining that § 2253(c)(2) "means 'showing that reasonable jurists could debate whether' relief should have been granted" (quoting *Slack*, 529 U.S. at 484)).

"While this standard is not overly rigid, it still demands 'something more than the absence of frivolity.' In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody*, 958 F.3d at 488 (internal citations omitted).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack,* 529 U.S. at 484.

Reasonable jurists would not debate whether the Court's procedural rulings regarding the scoring of the sentencing guidelines and trial counsel were correct or whether Petitioner has stated valid claims of the denial of a constitutional right. Reasonable jurists also could not conclude that the Court's assessment of

Petitioner's constitutional claim about appellate counsel is debatable or wrong.

The Court, therefore, **DECLINES** to issue a certificate of appealability.

Nevertheless, because Petitioner was granted permission to proceed *in forma pauperis* in this Court, *see* ECF No. 3, he may appeal this decision *in forma pauperis* without further authorization from the Court, as an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).


s/Paul D. Borman
PAUL D. BORMAN
United States District Judge

Dated: February 1, 2022